# United States Court of Appeals
## For the First Circuit

No. 09-2565

REDONDO CONSTRUCTION CORP.,

Plaintiff-Appellant,

v.

JOSÉ M. IZQUIERDO, in his individual capacity and in his official
capacity as Secretary of the Puerto Rico Department of
Transportation and Public Works, et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lipez, Leval,[*] and Thompson,
Circuit Judges.

    Luis Cotto-Román, with whom Yolanda Benítez de Alegría and
José A. Cabiya-Morales were on the brief, for appellant.
    María E. Villares-Señeriz, for appellees Puerto Rico Highway
and Transportation Authority and José Izquierdo, in his official
capacity as Secretary of the Puerto Rico Department of
Transportation and Public Works.
    Roberto Ruiz Comas, for appellee Puerto Rico Buildings
Authority.
    Eliezer A. Aldarondo-López, with whom Eliezer Aldarondo-Ortiz
was on the brief, for appellees the Governor of Puerto Rico, in his
official capacity; José Izquierdo, in his individual capacity;
Fernando Fagundo, in his individual capacity; and José Lluch-
García, in his individual capacity.

---

[*] Of the Second Circuit, sitting by designation.

October 25, 2011

**LEVAL**, **Circuit Judge**.   Plaintiff Redondo Construction Corporation ("Redondo") appeals from the adverse judgment of the United States District Court for the District of Puerto Rico in its suit against the Puerto Rico Highway and Transportation Authority (the "Highway Authority"), the Puerto Rico Public Buildings Authority (the "Buildings Authority") (collectively, the "Authorities"), and various officials of the Puerto Rican government.  Redondo alleges that the defendants unlawfully applied a Puerto Rico statute retroactively to breach settlement agreements entered into by Redondo and the Authorities before the statute was enacted.   Redondo claims that the defendants' breach of the agreements impaired the obligation of those contracts in violation of the Contracts Clause of the federal Constitution and constituted breaches of contract under Puerto Rico law.

The district court granted the defendants' motions for summary judgment on the Contracts Clause claim, accepting their argument that the obligation of the agreements had not been impaired because Redondo was not prevented from obtaining damages if it established breaches of the agreements.  Having dismissed the sole federal claim on the merits, the district court declined to exercise supplemental jurisdiction over Redondo's breach of contract claims under Puerto Rico law and dismissed them without prejudice.

We find that the district court correctly concluded that Redondo cannot establish its constitutional claim and therefore affirm that portion of the judgment. We agree with Redondo, however, that the district court exceeded its discretion in declining to exercise jurisdiction over Redondo's remaining claims. Accordingly, we vacate the judgment with respect to those claims and remand for further proceedings consistent with this opinion.

## Background

On April 15, 1999, Redondo entered into a plea agreement in <u>United States</u> v. <u>Redondo Construction Corp.</u>, No. 95-391 (D.P.R.), a criminal prosecution arising out of its conduct during performance of a construction project funded by the Federal Highway Administration ("FHWA"). Pursuant to the agreement, Redondo admitted to aiding and abetting the making of false statements to the U.S. Department of Transportation and to Banco Santander de Puerto Rico, in violation of 18 U.S.C. §§ 2, 1014, and 1020. The agreement barred Redondo, for a one-year period beginning July 30, 1999, from bidding on, or receiving any benefit from, any contract funded in whole or part by the FHWA. In addition, for the two years following the one-year debarment, the agreement conditioned Redondo's eligibility to participate in FHWA-funded projects on supervision by a monitor selected by the FHWA and paid for by Redondo.

The day after Redondo entered into the plea agreement, the Highway Authority notified Redondo that it was revoking the bids it had awarded to the company before the guilty plea, that it was immediately suspending the company from participating in any bids it awarded for 30 days, and that it intended to extend the suspension for an undetermined period. A few weeks later, on May 10, 1999, the Buildings Authority notified Redondo that it was also barring the company from participating in any bids it awarded. Redondo challenged both suspensions.

Redondo challenged the Buildings Authority's suspension in an administrative proceeding. On April 5, 2000, before Redondo's administrative action was resolved, Redondo and the Buildings Authority entered into a settlement agreement that allowed Redondo to begin bidding for Buildings Authority contracts on April 16, 2000.

Redondo contested the Highway Authority's suspension in a separate administrative proceeding. On May 7, 1999, Redondo moved for reconsideration of the suspension before the Puerto Rico Department of Transportation and Public Works ("DTOP"). While Redondo was challenging the Highway Authority's suspension, Redondo and the FHWA were negotiating an agreement (the "Monitoring Plan") that would govern Redondo's obligations between July 30, 2000 and July 30, 2002, the two-year period during which Redondo's eligibility to participate in FHWA-funded projects was conditioned

on supervision by an outside monitor.  In late 2000, the Highway Authority joined these talks.  On November 14, 2000, while the DTOP administrative proceeding was still pending, Redondo, the FHWA, and the Highway Authority executed the Monitoring Plan.  The same day, Redondo and the Highway Authority entered into a settlement agreement and jointly requested the termination of the DTOP administrative proceeding.  The agreement allowed Redondo to participate, beginning December 11, 2000, on bids awarded by the Highway Authority if it complied with the conditions set forth in the Monitoring Plan.

On December 29, 2000, Puerto Rico passed Law 458.  P.R. Laws Ann. tit. 3, §§ 928-928i.  The statute prohibits a government official from awarding contracts to any natural or juridical person who has been convicted of a crime constituting fraud, embezzlement, or the misappropriation of public funds.[1]  The statute also requires the rescission of any government contract entered into with a party convicted of a specified offense, § 928c, and provides that all government contracts are deemed to include a term authorizing rescission if the counterparty is convicted of a specified offense, § 928e.  The statute expressly provides that it does not apply to contracts entered into before it took effect: "The provisions of this chapter shall not apply retroactively nor

---

[1] The prohibition extends to 20 years from the date of conviction of a felony, and to 8 years from the date of conviction of a misdemeanor.  § 928d.

shall they interfere with contracts in effect . . . ." § 928h.

Redondo had successfully bid on fourteen Buildings Authority projects after the settlement agreement between it and the Buildings Authority became effective on April 16, 2000. But after Law 458 was passed, the Buildings Authority canceled ten of the bids, including one for which it had already executed a contract with Redondo. The Buildings Authority cited lack of project funding as its reason for canceling the bids.

On February 14, 2001, the Highway Authority informed Redondo that it was withdrawing its consent to the settlement agreement and the Monitoring Plan due to Redondo's failure to make timely compliance with a term requiring it to deposit $25,000 into an escrow account to fund the services of the outside monitor. Deposition testimony of a Highway Authority official, however, suggests that agency officials decided to terminate the settlement agreement in an attempt to further the policy of Law 458, despite their knowledge that the statute could not lawfully be applied retroactively. After notifying Redondo of its decision, the Highway Authority asked DTOP to reopen the administrative proceeding and schedule a hearing to determine the length of Redondo's suspension. Redondo deposited $25,000 into the escrow account the same day, but DTOP nonetheless granted the Highway Authority's request.

DTOP held the hearing requested by the Highway Authority

in late 2003. On June 22, 2004, the hearing examiner issued a report and recommendation concluding that Redondo had not breached the Monitoring Plan, and that the Highway Authority's termination of the settlement agreement and the Monitoring Plan should be deemed ineffective. The Secretary of DTOP initially adopted the examiner's report, but later granted a motion for reconsideration by the Highway Authority and determined that the Highway Authority had validly withdrawn its consent to the settlement agreement and the Monitoring Plan. Redondo appealed DTOP's determination to the Puerto Rico Court of Appeals.

On May 31, 2005, the Court of Appeals ruled that it was not clear that Redondo had breached the Monitoring Plan, and that even if Redondo had not timely deposited the $25,000 into the escrow account, its breach was not sufficiently serious to justify the Highway Authority's unilateral termination of the settlement agreement. The Court of Appeals ordered the Highway Authority to comply with the terms of the settlement agreement and the Monitoring Plan as soon as its judgment became final and enforceable. The Highway Authority petitioned for certiorari in the Supreme Court of Puerto Rico, but that court denied the petition and two motions for reconsideration.

In December 2001, while Redondo was litigating the Highway Authority's actions in the Puerto Rico courts, it brought this federal action challenging the actions of both the Highway

Authority and the Buildings Authority. Redondo alleged that both Authorities had unlawfully applied Law 458 to breach their settlement agreements with Redondo -- the Highway Authority by withdrawing its consent to the settlement agreement and the Monitoring Plan, and the Buildings Authority by canceling the bids it had awarded to Redondo after the settlement agreement between them became effective. Redondo claimed that the Authorities' actions violated the Contracts Clause of the federal Constitution. Redondo also asserted breach of contract claims under Puerto Rico law, claiming that the Authorities' actions breached the settlement agreements and that the Buildings Authority's cancellation of the bids it had awarded to Redondo constituted independent breaches of contract. Redondo sought monetary and injunctive relief.[2]

In January 2003, the district court granted the Highway Authority's motion to stay proceedings pending resolution of the administrative proceeding before DTOP. Proceedings in the district court resumed after the Puerto Rico Court of Appeals ruled in May 2005 that the Highway Authority's termination of the settlement agreement was invalid. But the case stalled for a year and a half while it was successively reassigned to three judges. The district court eventually issued a scheduling order in January 2007 granting the parties until April 30, 2007 to submit dispositive motions.

---

[2] Redondo filed for bankruptcy protection on March 19, 2002, in the United States Bankruptcy Court for the District of Puerto Rico.

The parties engaged in extensive discovery and, pursuant to the scheduling order, exchanged expert reports. Of the 15 depositions Redondo took, all but a few were taken in English.

On April 30, 2007, the Highway Authority and the Buildings Authority each moved for summary judgment on Redondo's Contracts Clause claim and argued that the district court should decline to exercise supplemental jurisdiction over Redondo's local law claims if it dismissed the federal claim.

The motions remained pending in December 2007. On December 24, 2007, Redondo wrote a letter to the district court explaining that the parties could not submit a joint proposed pre-trial order by early January, as the court had ordered, without a ruling on the summary judgment motions. In a brief order, the court instructed the parties to submit the proposed order by early January even if it had not yet ruled on the pending motions. After spending considerable time reaching agreement on factual stipulations and exhibits to be offered at trial, the parties submitted a proposed pre-trial order on January 11, 2008.

At a pre-trial conference on January 16, the court scheduled a final settlement conference for January 25. Trial was to begin February 11 and was expected to take three weeks. At the settlement conference on January 25, the court reaffirmed the February 11 trial date and instructed the parties to submit marked exhibits to a deputy clerk by February 6. To meet the deadline,

Redondo's counsel reviewed hundreds of documents and commissioned the translation of some that had not yet been translated into English. In preparation for the impending trial date, Redondo also incurred expenses to serve subpoenas on several witnesses and make travel arrangements for others.

On February 7, 2008, four days before trial was scheduled to begin, the district court granted the Authorities' summary judgment motions and dismissed the complaint. The court acknowledged that the lawfulness of the Highway Authority's termination of the settlement agreement had been fully litigated in the Puerto Rico courts and that the Puerto Rico Court of Appeals' judgment that the Highway Authority had breached the settlement agreement was conclusive. Nevertheless, the court ruled, Redondo had no claim under the Contracts Clause because neither Law 458, nor any other government action, absolved the Authorities of the duty to pay damages for breach of the settlement agreements. Thus, Redondo could not show that an obligation of either contract had been impaired. Noting that "[i]t is well settled that a district court may decline to exercise supplemental jurisdiction when all federal law claims have been dismissed," the court dismissed without prejudice Redondo's claims under Puerto Rico law.

On February 22, 2008, Redondo moved under Federal Rule of Civil Procedure 59(e) for reconsideration of the judgment. The

district court denied the motion on September 28, 2009. Redondo timely appealed.

## Discussion

Redondo argues that the district court erred in awarding summary judgment to the defendants on its Contracts Clause claim and in declining, on the eve of trial, to exercise supplemental jurisdiction over its claims under Puerto Rico law. Because the district court's analysis of the Contracts Clause claim was correct, we affirm the judgment on that claim. We vacate the judgment on the other claims, however, because we conclude the district court was not at liberty under these unusual circumstances to decline to adjudicate the local law claims.

### A.    The Contracts Clause Claim

We review de novo a grant of summary judgment. Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005). We will uphold the judgment if the evidence, viewed in the light most favorable to the party against whom it was entered, demonstrates that there are no genuine issues of material fact and that judgment is warranted as a matter of law. Fed. R. Civ. P. 56(c); Auto Mfrs., 430 F.3d at 34.

Redondo claims that the Authorities breached the settlement agreements in a de facto attempt to retroactively enforce Law 458 against it. Redondo contends that although neither Authority cited Law 458 as the reason for its alleged breach, there

-12-

is sufficient evidence in the record from which a jury could reasonably find that the Authorities' true motive for breaching the contracts was a desire to apply Law 458 to Redondo, notwithstanding the statute's express proviso against its retroactive application. Therefore, Redondo argues, the district court erred in granting summary judgment to the defendants on its Contracts Clause claim.

Redondo misunderstands the nature of the restriction imposed by the Contracts Clause. Article I, § 10 of the Constitution prohibits a state from "pass[ing] any . . . Law impairing the Obligation of Contracts."[3] The clause does not bar a state from merely breaching a contract, which is the prerogative of any private party, subject to liability for the breach. See TM Park Ave. Assocs. v. Pataki, 214 F.3d 344, 348-49 (2d Cir. 2000); Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1250 (7th Cir. 1996) ("It would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution."). A contract creates alternative obligations: performance or payment of damages for breach. See Oliver Wendell Holmes, "The Path of the Law," 10 Harv. L. Rev. 457, 462 (1897). If a state breaches a contract but does not impair the counterparty's right to recover damages for the breach, the state has not impaired the obligation of the contract. See Hays v. Port of Seattle, 251 U.S. 233, 237 (1920); cf. Casey v. DePetrillo, 697

_____

[3] The defendants do not contest that the Contracts Clause binds Puerto Rico, even though it is not a state.

-13-

F.2d 22, 23 (1st Cir. 1983) (holding that public employees' claim that breach of their employment agreements constituted a taking of property without just compensation was "at bottom, a simple action for breach of contract" because there was no showing that the state would fail to provide a remedy for a demonstrated breach of contract).

Applying these principles, any breach of the settlement agreements by the Authorities did not violate the Contracts Clause, even if committed in an attempt to unlawfully enforce Law 458 retroactively against Redondo. To establish a Contracts Clause claim, Redondo must show more than a breach of the settlement agreements; it must show that the defendants have somehow impaired its ability to obtain a remedy for a demonstrated breach. See Crosby v. City of Gastonia, 635 F.3d 634, 640 (4th Cir. 2011) (explaining that the Contracts Clause "provides no basis to complain of an alleged impairment in the first instance," but supports a claim "where a state . . . has foreclosed the imposition of an adequate remedy for an established impairment"). Redondo has not alleged any such impairment, and we see evidence of none in the record.

No action of the defendants, and nothing in Law 458, prevents Redondo from obtaining a remedy for a demonstrated breach of the settlement agreements. Redondo is free to sue the Authorities for breach of the settlement agreements, and has indeed

done so by bringing the local law claims asserted in this action. Neither Authority has asserted as an affirmative defense that it is excused by Law 458, or any other Puerto Rico legislative action, from compensating Redondo in damages if Redondo establishes a breach of contract. Nor has any court ruled that Redondo has no entitlement to compensation in damages if it succeeds in showing breach of the settlement agreements. Accordingly, there has been no violation of the Contracts Clause and the district court properly granted summary judgment to the defendants on the Contracts Clause claim.

### B. The Claims Under Puerto Rico Law

The district court explained its dismissal of Redondo's claims under Puerto Rico law by noting, "It is well-settled that a district court may decline to exercise supplemental jurisdiction when all federal claims have been dismissed." While this is so in most circumstances, it is not an altogether correct statement of the law.

The Supreme Court indeed said in United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." The Supreme Court, however, has repeatedly clarified that its statement in Gibbs "does not establish a mandatory rule to be applied inflexibly in all cases." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Rosado v. Wyman, 397

-15-

U.S. 397, 403-05 (1970). Rather, a district court must exercise "informed discretion" when deciding whether to assert supplemental jurisdiction over state law claims. Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996). No categorical rule governs the analysis; a court must weigh concerns of comity, judicial economy, convenience, and fairness. See id. at 257; Carnegie-Mellon, 484 U.S. at 350 (observing that this analysis is prescribed by Gibbs).

It is true that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7 (emphasis added) (explaining that the Gibbs court was referring to the usual case, not every case, when it stated that state law claims should be dismissed if the federal claims are dismissed before trial). But that observation does not relieve the district court of its obligation to consider the relevant factors to determine whether the exercise of supplemental jurisdiction is appropriate in the particular case before it. As we have stressed, the proper inquiry is "pragmatic and case-specific." Roche, 81 F.3d at 257.

Here, in our view, the relevant factors did not merely support the propriety of the exercise of supplemental jurisdiction. Interests in judicial economy, convenience, and fairness weighed

-16-

overwhelmingly in favor of the court's exercising its jurisdiction. The district court declined to exercise supplemental jurisdiction only four days before trial was scheduled to begin, when the action had been pending in federal court for more than six years, the summary judgment record had been complete for nearly a year, and the parties were almost completely prepared for trial.

Moreover, nearly all of the extensive discovery taken was relevant not only to Redondo's constitutional claim, but also to its claims under Puerto Rico law. Redondo's breach of contract claims rested on virtually the same factual basis as did its Contracts Clause claim. Although the federal and Puerto Rico claims invoked slightly different legal theories, both complained of the defendants' violation of Redondo's contract rights, and both sought essentially the same relief. See Tomaiolo v. Mallinoff, 281 F.3d 1, 11 (1st Cir. 2002) (finding that exercise of supplemental jurisdiction "furthered judicial economy" because "all claims arose from the same core of facts").

Refusal to exercise jurisdiction over the local law claims would impose huge burdens on Redondo because the extensive discovery for the expected federal court trial had been conducted in English. Puerto Rico's courts operate in Spanish. Thus, to litigate the claims in the Puerto Rico courts, Redondo would need to bear the cost of translating the documents and testimony produced or taken in English, or of redoing extensive discovery in

Spanish. In addition, all of Redondo's trial preparation was done with a view to a trial conducted in English. Much of its work would have needed to be redone or translated for use in a Puerto Rico court.

Given the age and advanced stage of the litigation, the common factual basis for Redondo's claims under Puerto Rico and federal law, and the enormous expense Redondo would incur in redoing the discovery and trial preparation so as to try the non-federal claims in courts that operate in a different language, the district court's decision to send the parties to the Puerto Rico courts to begin all over again was both wasteful and enormously harmful to Redondo.

Consideration of principles of comity does not change the analysis. As the district court recognized, Puerto Rico courts had already ruled that the Highway Authority's "withdrawal of consent" to the settlement agreement was invalid, leaving unresolved only the issue of whether Redondo was entitled to damages for the Highway Authority's breach, and if so, how much. As for Redondo's breach of contract claims against the Buildings Authority, they raised no thorny or unresolved issues of Puerto Rico law. Federal courts in Puerto Rico exercising diversity jurisdiction routinely apply the well-established principles of contract law and damages calculation that govern Redondo's breach of contract claims. The

comity concerns raised by the exercise of supplemental jurisdiction at this stage are negligible.

In Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996), we approved the district court's exercise of supplemental jurisdiction because "[t]he litigation had matured well beyond its nascent stages, discovery had closed, the summary judgment record was complete, the federal and state claims were interconnected, and powerful interests in both judicial economy and fairness tugged in favor of retaining jurisdiction." We therefore found the district court's exercise of jurisdiction in that case to be "squarely within the realm of its discretion." Id. For very much the same reasons, as explained above, we conclude that it was not within the district court's permissible range of discretion to decline to exercise jurisdiction over Redondo's local law claims.[4]

### Conclusion

For the foregoing reasons, we affirm the dismissal of Redondo's claim under the Contracts Clause and vacate the dismissal of its claims under Puerto Rico law. The case is remanded to the district court for further proceedings consistent with this

---

[4] After the district court dismissed Redondo's local law claims, Redondo refiled the claims in a Puerto Rico court. The defendants argue that Redondo's appeal of the dismissal of its local law claims is therefore moot and that, in any event, federal court abstention is required by the Colorado River doctrine. We find no merit in either argument.

-19-

opinion.[5]  Costs are denied at this time pending the conclusion of the litigation.

So ordered.

<hr>

[5] Redondo's motion to supplement the record on appeal (which was styled as a request that we take judicial notice of certain statements by the Highway Authority) is denied.  In any event, consideration of the submitted statements would not have affected the disposition of the appeal.